# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LEE J. STOKES,<br><br>                      Plaintiff,<br><br>v.<br><br>JACOB DORN,<br><br>                      Defendant. | Case No. 22-CV-1543-JPS<br><br>**ORDER** |

      Plaintiff Lee J. Stokes ("Plaintiff" or "Stokes"), who is currently incarcerated at Jackson Correctional Institution ("JCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that Defendant Jacob Dorn ("Defendant" or "Dorn") violated his constitutional rights. ECF No. 1. On October 4, 2022, District Court Judge James D. Peterson, located in the Western District of Wisconsin, screened the amended complaint and allowed Plaintiff to proceed on an Eighth Amendment claim for deliberate indifference to his serious medical needs for failing to deliver Plaintiff's prescribed medications. ECF No. 15 at 5. On December 23, 2022, the case was transferred to this branch of the court for further proceedings. ECF No. 26.

      On January 20, 2023, the Court entered a scheduling order with summary judgment motions due on or before August 28, 2023. ECF No. 33. On August 25, 2023, Defendant filed a motion for summary judgment. ECF No. 38. On September 27, 2023, Plaintiff filed a brief in opposition. ECF No. 43. On October 9, 2023, Defendant filed a reply brief. ECF No. 44. The motion for summary judgment is now fully briefed and ready for

disposition. As described in detail below, the Court will grant Defendant's motion for summary judgment and dismiss this case with prejudice.

1. **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court construes all facts and reasonable inferences in a light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

2. **FACTUAL BACKGROUND**

In accordance with the Court's summary judgment protocols, the parties jointly submitted an undisputed statement of facts. ECF No. 41. Defendant also submitted additional proposed findings of fact. ECF No. 42. Plaintiff failed to file any response to Defendant's proposed findings of fact. As such, the Court will consider Defendant's additional proposed findings of fact as undisputed. *See* Fed. R. Civ. P. 56(e)(2). As such, the following facts are taken directly from the statement of undisputed facts and Defendant's separate proposed finding of facts with only minor changes for clarity. *See* ECF Nos. 41, 42.

### 2.1 Parties and Background

At the time this case was filed, Plaintiff was in the custody of Waupun Correctional Institution ("WCI"). Plaintiff is currently incarcerated at JCI. At all times relevant to this case, Defendant was a Correctional Officer at WCI. Defendant is currently a Correctional Officer at Dodge Correctional Institution.

Judge Peterson screened Plaintiff's amended complaint and allowed Plaintiff to proceed on an Eighth Amendment claim against for inadequate medical care. Defendant filed his answer on November 29, 2022.

### 2.2 Medication Delivery at WCI

A Wisconsin Attorney General Opinion, 66 Wis Op. Attorney General 179 (Wis. A.G.), WL 36140, allows security staff members/correctional officers ("correctional staff members") to deliver medication to inmates. Correctional staff members are only allowed to deliver medication to an inmate when the medication has been ordered and prescribed by medical staff and they use the approved Department of Corrections ("DOC") medication delivery procedure. Medications that have been ordered prescribed for an inmate by a healthcare professional are placed in unit-dose packages (on punch cards) and labeled by Central Pharmacy or licensed health care staff members. Central Pharmacy first places a label on the top left of the blister pack of medication to identify the medication name, strength, lot number, and a barcode. When the medication is prescribed for an inmate, the pharmacy places a second label on the top right side of the blister pack, indicating the inmate's information. The pharmacy or other health care staff members are responsible for labeling medications.

Health care staff members are responsible for preparing the medication lists for inmates, which lists medications that are to be delivered by correctional staff members. Correctional staff members may not make any changes to the inmate's medication list that was entered by health care staff members. Correctional staff members are only responsible for the delivery of prescribed medications.

"Controlled medication" (also referred to as officer-controlled medications or staff-controlled medications) are those that are maintained under staff control until an individual dose is provided to an inmate. The staff control of medication may be permanent or temporary depending on the type of medication, population status of the inmate, or at the direction of an advanced care provider or nurse clinician. Most institutions have four standard times when medications are delivered to inmates, including AM (normally around the breakfast meal), noon (normally around the lunch meal), PM (normally around the supper meal), and HS (normally around bedtime).[1] The actual time of delivery is designated by each facility and may vary. WCI has medication delivery scheduled four times a day, depending on an inmate's prescriptions.

Correctional staff members are required to receive training on medication delivery. The electronic medical record ("EMR") is a standardized electronic system that is generally utilized by DOC institutions to maintain the medical records of inmates electronically. The EMR includes a Medication Administration Record ("MAR") which is utilized to maintain an electronic record of inmate prescriptions and records the date and time of delivery of medications to inmates. Under

---

[1] HS is the abbreviation for *Hora Somnia* in Latin.

standard EMR procedures, a laptop computer and a barcode scanner are utilized by correctional staff members when passing out medications to inmates to record the delivery of medications in the EMR. The EMR system was in place at WCI during the timeframe of this lawsuit.

When a correction staff member is assigned to medication pass, they log into the EMR software using unique credentials. Once logged in, the correctional staff member can view the cell and unit location of all inmates and their ordered prescriptions, dosages, scheduled date/time as to when they are supposed to receive their medications, and medication statuses (overdue, pending, PRN (as needed)).

Prior to medication delivery, the correctional staff member enters the current date and time and selects the medication pass time. The correctional staff member selects the current unit/area they are delivering medications. The correctional staff member can view the medications that need to be delivered to each inmate in their assigned area. The staff member typically makes their rounds with the computer and scanner to deliver medications to inmates as required and record the delivery of the appropriate medications. The correctional staff member then typically uses the scanner to scan an inmate's ID barcode for that specific inmate's medication list. An inmate's ID barcode is displayed on their ID badge. If an inmate is housed in the Restrictive Housing Unit ("RHU"), their barcode is maintained on a face sheet on the outside of the inmate's cell. The correctional staff member verifies the identity of the inmate. After scanning the inmate's ID barcode, the EMR displays the current inmate's complete medication list, the associated dosages, and when the medication is scheduled to be delivered. The correctional staff member then typically scans the barcode of the medication to be dispensed to the current inmate.

Under the standard EMR procedures, once the medication barcode is scanned, the EMR records the date and time of when that specific medication was delivered to the inmate. Under standard EMR procedures, the correctional staff member continues to scan all additional medications to be delivered to the inmate during that specific medication pass. Under standard EMR procedures, once all the inmate's medications have been scanned successfully and recorded in the EMR medication list, the correctional staff member gives the medication to the inmate, unless the medication is not there or needs to be refilled. Under standard EMR procedures, the correctional staff member clicks the "sign" button on the individual inmate's medication list to add their electronic signature and verify delivery of the appropriate medications to the correct inmate.

An inmate may refuse to have a medication delivered to them. At the end of medication pass, the medications which were scheduled but refused by the inmate or not delivered to the inmate are charted as "Not Done" by the correctional staff member. If an inmate refused the medication, the correctional staff member selects "Refused" as the reason for the mediation being charted as "Not Done." Once the correctional staff member finishes the medication pass, they exit out of the EMR. If a staff member scans an inmate's barcode and then scans the barcode of a medication that the inmate does not have scheduled, the staff member receives an alert on the screen to prevent the distribution of an incorrect medication to the incorrect inmate.

### 2.3 Plaintiff's Medication at WCI

Plaintiff transferred from Dodge to WCI on October 9, 2019. Plaintiff's medications were noted as officer controlled upon his intake from Dodge to WCI due to him not being able to remember to take all his

Page 6 of 20
Case 2:22-cv-01543-JPS    Filed 03/15/24    Page 6 of 20    Document 45

medications when they are scheduled. The following medications and dosages were documented by a medical staff member in Plaintiff's medical chart upon his arrival to WCI:

- Asa (aspirin) — 81 mg oral delayed release tablet, prescribed once daily
- Atorvastatin —40mg oral tablet, prescribed once per day
- Clopidogrel — 75mg oral tablet, delayed release tablet, prescribed twice per day (AM, PM)
- Divalproex — 500 mg oral tablet, delayed release tablet, prescribed twice per day (AM, PM)
- Duloxetine — 60mg oral tablet, delayed release capsule, prescribed once per day
- Isosorbide — 30mg oral tablet, extended release, prescribed once per day (AM)
- Metoprolol — 50mg tablet, prescribed twice per day (AM, PM)
- Fish oil
- Ranitidine — 150mg oral tablet, prescribed twice per day (AM, HS)
- Trazodone — 150mg oral tablet, prescribed once per day (HS)

Plaintiff was first prescribed acetaminophen on October 9, 2019 at WCI — 650 mg oral tablet, prescribed four times a day as needed. Plaintiff was later prescribed furosemide by Dr. Jeffrey Manlove on October 24, 2019 — 10mg oral tablet prescribed once per day.

### 2.4 Plaintiff's Medication Requests

Between January 18, 2020 and March 5, 2020, Plaintiff submitted medication refill requests for the following medications:

- Divalproex
- Acetaminophen
- Duloxetine

- Aspirin
- Atorvastatin
- Fish Oil
- Clopidogrel
- Isosorbide
- Metoprolol
- Ranitidine
- Furosemide
- Trazodone

**2.5    Plaintiff's Medication Delivery and Defendant's Schedule**

On January 27, 2020, Defendant worked first shift (6AM–2PM) in Central Receiving. Defendant also worked second shift (2PM–10PM) in North Program, an extension of RHU and within North Cell Hall. On January 27, 2020, Plaintiff was housed in North Cell Hall. Defendant was not responsible for delivering Plaintiff's medication on the morning of January 27, 2020. The medical records do not show that Plaintiff received bedtime medications of Ranitidine and Trazodone on January 27, 2020.

On January 31, 2020, Defendant worked 7:30AM–4PM in Central Receiving and had no contact with Plaintiff's cell hall. On February 2, 2020, Defendant did not work at the institution. On February 3, 2020, Defendant worked first shift in Mail and Property and second shift in North Program. The MAR printout states that Plaintiff refused his PM and bedtime medications on February 3, 2020. On February 6, 2020, Defendant did not work at the institution because of a regular day off ("RDO"). Defendant was not responsible for delivering Plaintiff's medications on February 6, 2020. Defendant did not work at the institution because of a RDO on February 7, 14, 15, and 17, 2020.

On February 27, 2020, Defendant worked first and second shift in North Program. Plaintiff was housed in North West Hall and medications were delivered by others. On March 4, 2020, Defendant worked first shift as Northwest Cell Hall Support. On March 4, 2020, Plaintiff was housed in North West Hall.

On March 4, 2020, Plaintiff received nineteen out of twenty prescribed doses of medication. The sole medication that Plaintiff claims he did not receive on March 4, 2020, is Clopidogrel. The institution's MAR states that on March 4, 2020, Allen Neibauer delivered Clopidogrel to Plaintiff and that Plaintiff refused the medication. As a result of missing medication doses on January 27, 2020, Plaintiff claims that he felt anxiety about not receiving his medication; he visited the Health Services Unit but did not require treatment. As a result of all the missed doses of medication that he alleges, Plaintiff claims that he suffered a stomachache, high blood sugar, blurred vision, and anxiety until he received his medication again.

3.   **ANALYSIS**

Defendant's motion for summary judgment seeks dismissal of the Eighth Amendment deliberate indifference to a serious medical need claim because, among other reasons, the record is devoid of evidence to support a deliberate indifference claim. Although Plaintiff submitted a brief in opposition to summary judgment, ECF No. 43, his brief refers to evidence not in the summary judgment record; Plaintiff failed to submit any facts in response to Defendant's proposed disputed facts and fails to provide any additional facts to support his argument.

Instead, Plaintiff's opposition relies, in large part, on factual allegations contained in his amended complaint. *See* ECF No. 43. The Court notes that "the law allows verified complaints—containing not just

allegations but sworn statements of fact—to serve as evidence for purposes of summary judgment." *Jones v. Van Lanen*, 27 F.4th 1280, 1285–86 (7th Cir. 2022) (citing *Ford v. Wilson*, 90 F.3d 245, 246–47 (7th Cir. 1996). However, neither Plaintiff's original complaint, ECF No. 1, nor the amended complaint, ECF No. 11, is sworn and verified. As such, the Court does not consider Plaintiff's allegations in the amended complaint as evidence for the purposes of summary judgment. *See Beal v. Beller,* 847 F.3d 897, 901 (7th Cir. 2017) ("[T] there is a distinction between an ordinary complaint that serves as a pleading, and a verified complaint.); *see also Shaul v. Hibbard*, No. 119-CV-3962-JMS-TAB, 2022 WL 1045013, at *1 (S.D. Ind. Apr. 7, 2022) ("The unverified amended complaint is not evidence and thus, statements made in the amended complaint are not considered in resolving the pending motion for summary judgment.") (citing *James v. Hale,* 959 F.3d 307, 314 (7th Cir. 2020); *Boxdorfer v. Thrivent Fin. for Lutherans,* No. 1:09-CV-0109-DFH-JMS, 2009 WL 2448459, at *2 (S.D. Ind. Aug. 10, 2009) (distinguishing evidentiary significance of factual allegations in a verified original complaint with allegations in an unverified amended complaint).

As such, the Court is left to decide summary judgment based on the undisputed facts that have been properly submitted into evidence. The Court takes seriously its obligation to liberally construe pro se filings and to construe all facts and reasonable inferences in a light most favorable to the nonmovant at the summary judgment stage. However, liberally construing filings is not the functional equivalent of allowing pro se parties to disregard the rules of civil procedure and this Court's summary judgment protocols. Even pro se litigants are obliged to follow procedural rules. *See McCurry v. Kenco Logs. Servs., LLC*, 942 F.3d 783, 787 n.2 (7th Cir. 2019) (courts may "strictly enforce local summary-judgment rules" even

against pro se litigants); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1020 (N.D. Ill. 2018) (disregarding portions of plaintiff's proffered facts on summary judgment for failure to comply with local rule). As such, and for the reasons explained below, the Court will grant Defendant's motion for summary judgment.

### 3.1 Eighth Amendment Standard

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. To prove that Defendant violated his rights under the Eighth Amendment, Plaintiff must present evidence establishing that he suffered from "'an objectively serious medical condition'" and that Defendant was "'deliberately, that is subjectively, indifferent'" to that condition. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"'A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). A broad range of medical conditions may be sufficient to meet the objective prong of a deliberate indifference claim, including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and minor burns sustained from lying in vomit. *Id.* at 861 (citing *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (collecting cases)). On

the other hand, a prison medical staff "that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (1997) (quoting *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996)).

Under the Eighth Amendment, an incarcerated person does not have the right to direct his own course of treatment. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Likewise, an incarcerated person's disagreement "about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006)). But neither may prison officials "doggedly persist[ ] in a course of treatment known to be ineffective." *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005). To defeat Defendant's motion for summary judgment, Plaintiff must present evidence showing the treatment he received was "'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Id.* at 654 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Finally, "[a] delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640). To prevail on an Eighth Amendment claim alleging a delay in providing treatment, the plaintiff "must also

provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016). Such evidence may include a showing in the plaintiff's medical records that "the patient repeatedly complained of enduring pain with no modifications in care." *Id.* at 731; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

### 3.2    Eight Amendment – Analysis

First, Defendant does argue that Plaintiff did not have an objectively serious medical need. ECF No. 39. The record before the Court, however, is void of the specifics of Plaintiff's medical condition, the reasons he was prescribed his medications, and any medical consequences from the failure to take such medication. For example, the undisputed facts establish that Plaintiff was took Ranitidine — a 150mg oral tablet, prescribed twice per day. The record does not contain any explanation why Plaintiff takes Ranitidine or what consequences would result from any failure to take the medication. In *Miller v. Campanella*, 794 F.3d 878 (7th Cir. 2015), the Seventh Circuit Court of Appeals described Ranitidine (commonly sold under the trade name "Zantac") as a drug treating "serious forms" of gastroesophageal reflux disease ("GERD"). *Id.* at 878. The Seventh Circuit reversed the district court's grant of summary judgment and found that a jury could find that the defendants were deliberately indifferent to the plaintiff's serious medical need by denying his medication requests for Zantac. *Id.* at 880. Although the court did not explicitly analyze the serious medical need prong of the deliberate-indifference standard, its reversal of summary judgment suggests a finding that a serious medical condition did

in fact exist.[2] The burden at summary judgment is on the moving party to show that he is entitled to judgment as a matter of law. The Court finds that Defendant has not met that burden on the factual record before it. As such, for the purposes of this Order the Court will assume, without definitively ruling, that Plaintiff suffered from an objectively serious medical condition and satisfies the first prong of the deliberate indifference standard. As discussed below, however, this finding is immaterial to the ultimate result because the Court grants summary judgment on the subjective prong of the deliberate-indifference standard.

Second, as to the deliberate indifference prong, Defendant argues that Plaintiff cannot show he acted with deliberate indifference because he was only responsible for one missed dose of medicine. ECF No. 39 at 5. Defendant provides that Plaintiff's amended complaint alleges that he did not receive his prescribed medications on the following dates: January 27, 2020; January 30, 2020; February 2, 2020; February 3, 2020; February 6, 2020; February 14, 2020; February 15, 2020; February 17, 2020; February 27, 2020; and March 4, 2020. *Id.* at 6 (citing ECF No. 11 at 1–4). Of these ten dates, it is undisputed that Defendant either did not work at all or was not assigned to Plaintiff's unit on seven of the dates. *Id.* As such, Defendant argues he was not responsible for delivering Plaintiff's medications those days and could not be liable for any alleged deprivation because he was not personally involved. *Id.* at 6–7 (citing *Zentmeyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000). As to this portion of Defendant's argument, the

---

[2]The Court acknowledges that *Miller* involved a longer period of time that the plaintiff allegedly did not receive the medication in question. 794 F.3d at 880. However, the Court uses *Miller* merely to illustrate the possibility of this medication treating a serious medical issue.

Page 14 of 20
Case 2:22-cv-01543-JPS    Filed 03/15/24    Page 14 of 20    Document 45

Court agrees. The record is devoid of any facts showing that Defendant was deliberately indifferent to Plaintiff's medical needs on dates he either did not work at all or dates that he was not assigned to Plaintiff's unit.

Defendant then addresses the three remaining dates at issue: January 27, 2020, February 3, 2020, and March 4, 2020. *Id.* at 7. Of the twelve medications prescribed to Plaintiff during this time period, Defendant states that only three of those medications are relevant to this case—Trazodone, Ranitidine, and Clopidogrel. *Id.* On January 27, 2020, it is undisputed that Defendant was not responsible for delivery of Plaintiff's medication in the morning because he worked in a different unit. *Id.* Defendant acknowledges that he was responsible for delivering Plaintiff's medication that night at bedtime and that it is undisputed that Plaintiff did not receive Ranitidine or Trazodone. *Id.* On February 3, 2020, it is undisputed that Defendant was not responsible for delivery of Plaintiff's medication in the morning because he worked in a different unit. *Id.* Defendant did deliver Plaintiff's PM and bedtime medications that day; however, he argues it is undisputed that the institution's MAR states that Plaintiff refused his PM and bedtime medications. *Id.* at 8. On March 4, 2020, Defendant delivered Plaintiff's AM medications. *Id.* Defendant argues there is no genuine dispute of fact that Plaintiff received nineteen out of twenty prescribed doses of medication that day. *Id.* The only medication that Plaintiff claims he did not receive that day is Clopidogrel. Defendant argues that another officer delivered Clopidogrel that day.

Plaintiff, in turn, argues that he has specifically alleged that Defendant, on several occasions, did not scan his ID barcode or bring the computer up to his cell and simply entered it into the EMR system that Plaintiff's medication was either delivered or refused. ECF No. 43 at 1.

Plaintiff does not, however, support his assertion with any evidence in the record. Plaintiff does provide exhibits showing his MAR, ECF No. 43-1, however, these documents do not support his assertion. As such, the Court does not consider this line of argument. Plaintiff also argues that Defendant wrongly focuses on only the specific dates listed in the amended complaint. *Id.* at 1–2. Plaintiff states that Defendant's argument overlooks the allegation in his amended complaint that the misconduct began on December 16, 2019. *Id.* at 2 (citing ECF No. 11 at 2). Plaintiff provides that from December 16, 2019 until March 4, 2020, Defendant was assigned to his housing unit on sixteen of those days. *Id.* Of these dates, the MAR states that Defendant performed Plaintiff's medication delivery on December 22, 2019; December 25, 2019; January 23, 2020; January 27, 2020; February 3, 2020; February 20, 2020; and March 4, 2020. *Id.* Plaintiff also argues that Defendant's facts relating to his March 4, 2020 medication are not accurate. *Id.* Plaintiff points to the allegations his amended complaint, stating, "Again no pills on 3-4-20." *Id.* (citing ECF No. 11 at 3.)

The Court agrees with Defendant that, on the factual record before it, there is no evidence of Defendant's deliberate indifference to Plaintiff's serious medical need. Defendant relies on *Zentmeyer v. Kendall County*, 220 F.3d 805, 811 (7th Cir. 2000) and *West v. Millen*, 79 F. App'x 190, 194 (7th Cir. 2003) for the proposition that an occasional missed dose of medicine, without more, does not violate the Eighth Amendment. *See* ECF No. 39 at 8; ECF No. 44 at 3. In *Zentmeyer,* the Seventh Circuit addressed the claim of a pretrial detainee who "missed five pills of Amoxicillin out of thirty pills prescribed over eleven days; twenty-six applications of Otocort out of eighty applications prescribed over twenty days; and one dose each of Biaxin and Elocon out of ten doses prescribed for each over six days." 220

F.3d at 811. In affirming summary judgment in favor of the defendants, the court found that the defendants' actions fell short of the deliberate-indifference standard under the Fourteenth Amendment. *Id.* at 807. The court focused on the fact that nothing in the record showed that the defendants knew the plaintiff "might suffer serious injury or pain from the missing doses of medication" and that the defendants had "responded to [the plaintiff's] complaints and administered most of his medication according to schedule." *Id.* at 811.

While Defendant's description of *Zentmeyer* is accurate, the Seventh Circuit has also expressly held that a single incidence of failing to provide medication could potentially constitute deliberate indifference. In *Gil v. Reed*, 381 F.3d 649 (7th Cir. 2004), the Seventh Circuit reversed a district court's grant of summary judgment for a prison employee who angrily refused to provide an inmate with antibiotics that were both prescribed and available. *Id.* at 662. In so doing, the court held that a jury could find that the prison employee acted with malice demonstrating the subjective element necessary for a deliberate indifference claim. *Id.* The prescribed antibiotic was necessary to treat a severe infection; though the plaintiff obtained the medication the following day, the court found the delay could constitute deliberate indifference. *Id.* While the court acknowledged that "isolated instances of neglect in the course of treatment may not be enough to make out a claim for deliberate indifference," it also found that a deliberate and potentially malicious act, even a single incident, could make out a claim for deliberate indifference. *Id.* at 662.

Here, the Court finds this case more factually analogous to *Zentmeyer*, and accordingly finds that the undisputed facts do not show Defendant acted with deliberate indifference. Unlike *Gil,* nothing in the

factual record before the Court demonstrates a deliberate or malicious act. Even assuming the facts in the light most favorable to Plaintiff—that Defendant failed to provide Plaintiff with certain medications on three separate occasions—January 27, 2020, February 3, 2020, and March 4, 2020—the Court does not find that these isolated incidents of neglect, without more, constitute deliberate indifference. Nothing in the record suggests Defendant knew that Plaintiff had missed his medication on the dates in question much less that Defendant knew that missing the medication would cause Plaintiff serious harm. *See Zentmeyer*, 220 F.3d at 811 ("In fact, there is no evidence that any deputy thought missing doses of medication for an ear infection would cause a serious injury or loss of hearing."). Deliberate indifference is an "onerous standard," and Defendant missing doses of Plaintiff's medicine, "however incompetent," is not enough to meet it here. *See id.*

The Court notes that it does not necessarily agree with Defendant that Plaintiff was forever bound by only the specific dates he did not receive medication that are listed in his amended complaint. Construing the amended complaint broadly, as the Court must, Plaintiff did allege that Defendant's conduct began in December 2019. *See* ECF No. 11 at 1. Plaintiff may have understandably needed to conduct discovery to help determine the specific dates he missed his medication. However, Plaintiff never followed up his unverified pleading allegations with evidence at the summary judgment stage. No facts in the record suggest that Defendant failed to provide medications on any other dates other than those Defendant discusses. As such, the Court does not consider the additional dates provided by Plaintiff because there is no evidence to support his claims at this juncture.

Page 18 of 20
Case 2:22-cv-01543-JPS    Filed 03/15/24    Page 18 of 20    Document 45

Plaintiff's failure to submit any evidence in support of his opposition to summary judgment has proved detrimental to his case. The facts in the record demonstrate, at best, that Defendant was negligent in failing to provide Plaintiff all of his prescribed medications on three dates. Deliberate indifference requires "[s]omething more than negligence or even malpractice." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). "'[D]eliberate indifference' is a synonym for 'intentional or reckless conduct,' and 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Enge v. Obaisi*, No. 13 C 5154, 2016 WL 1359368, at *2 (N.D. Ill. Apr. 6, 2016) (quoting *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999)). The Court cannot draw this inference based on the facts present here. On this record, the Court finds that no reasonable juror could find that Defendant was deliberately indifferent to Plaintiff's medical needs. The Court will accordingly grant Defendant's motion for summary judgment.

### 4. CONCLUSION

For the reasons explained above, the Court will grant Defendant's motion for summary judgment and will dismiss this case with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment, ECF No. 38, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of March, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

This Order and the judgment to follow are final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **thirty (30)** days of the entry of judgment. See Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). Moreover, under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **twenty-eight (28)** days of the entry of judgment. The Court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The Court cannot extend this deadline. *See id*. A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.